UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TERESA ANN CULPEPPER,

      Plaintiff,

      v.

CITY OF ATLANTA, et al.,

      Defendants.

CIVIL ACTION NO.

1:12-CV-2180-CAP

# **O R D E R**

The following motions are pending before the court: motions for summary judgment [Doc. Nos. 155, 177] and for leave to file a second motion for summary judgment out of time [Doc. No. 178] filed by Paul J. Howard, the District Attorney for Fulton County, Georgia; Stephen Putnam, Waverly Settles, Melanie Davis, and Rebecca Keel, assistant district attorneys for Fulton County; and Wesley Vann, a victim-witness advocate employed the Fulton County District Attorney's office.[1]  Because there were additional

---

[1] Defendant Ashley Thornton was one of the defendants moving for summary judgment.  However, in response to that motion for summary judgment, the plaintiff stated an intention to dismiss Thornton from this suit [Doc. No. 168 at 1].  While the plaintiff has not done so, the court will construe the stated intention as a motion to voluntary dismiss Thornton.  In their reply brief, the moving defendants stated that they have no objection to Thornton's dismissal [Doc. No. 175 at 1].  Accordingly, the plaintiff's claims against Thornton are

defendants named in the complaint who have been dismissed from this suit,[2] the court will refer to the six defendants who have moved for summary judgment as the "moving defendants."  Finally, there is motion for oral argument filed by the plaintiff [Doc. No. 171].  As an initial matter the court finds no basis for oral argument; therefore the plaintiff's motion [Doc. No. 171] is DENIED.

## Factual and Procedural History

On August 21, 2011, the plaintiff called the Atlanta Police Department ("APD") to report that her vehicle was stolen.  Officer Codrington of the APD responded to the call and arrived at the plaintiff's residence at 1456 Hawkins Street, Atlanta.  The plaintiff told Codrington that she believed her boyfriend, Douglas Hopkins, took her truck.  Later in the morning on August 21, 2011, Codrington responded to a second call from the plaintiff and met

---

DISMISSED WITHOUT PREJUDICE, and the court does not address the summary judgment motion as to claims against Thornton.

[2] A number of defendants were properly dismissed through a stipulation of dismissal file on July 16, 2012 [Doc. No. 20].  Those defendants were terminated from this action by the clerk.  On September 13, 2013, the plaintiff filed a notice of voluntary dismissal of eleven more defendants [Doc. No. 153].  However, there was no stipulation included as required by Rule 41(a)(1)(A).  Nevertheless, there has been no objection by the eleven defendants who the plaintiff wishes to dismiss.  Therefore, the court APPROVES the dismissal of the defendants named in the September 13, 2013 notice [Doc. No. 153].

her where she was walking down the street near her residence.  The plaintiff told Codrington that her boyfriend returned home and left again when she told him she reported the truck stolen.

On that same morning in an unrelated incident, Angelo Boyd and his girlfriend, Teresa Gilbert, became involved in a physical altercation at Gilbert's residence at Ashby Circle, located about 1.2 miles from the plaintiff's residence on Hawkins Street.  The altercation between Boyd and Gilbert ended with Gilbert pouring hot liquid over Boyd.  Boyd drove himself to South Fulton Medical Center; while driving there, he called 911.  APD Officer Aguinaga met Boyd at the emergency room and took his statement about the incident between him and Gilbert.  Aguinaga got Gilbert's physical description and clothing description as well as her last known address and date of birth from Boyd.

Aguinaga communicated with Codrington about the information she received from Boyd about Gilbert.  Disregarding the physical description and other identifying information regarding Gilbert, Codrington arrested the plaintiff, Teresa Culpepper, and not Teresa Gilbert.  He then notified Aguinaga that he had arrested "the female," and Aguinaga believed, based upon that statement, that Codrington arrested the correct person.

Codrington issued an arrest citation to the plaintiff for aggravated assault and battery naming Boyd as a victim. The citation included the plaintiff's correct date of birth, January 16, 1965, and her social security number.  Meanwhile, Aguinaga completed an incident report listing the suspect on the assault of Boyd as Teresa Gilbert with a date of birth of April 1, 1969.

Later in the day, Aguinaga contacted the District Attorney's Complaint Room and passed along the incident report and the arrest citation.  Despite noticing the discrepancies between the names and dates of birth as to Culpepper and Gilbert, Assistant District Attorney Putnam processed the complaint against the plaintiff, erroneously concluding that the plaintiff used the alias "Teresa Gilbert."

On the following day, August 22, 2011, Assistant District Attorney Melanie Davis began work on the plaintiff's criminal proceedings for purposes of sending subpoenas for grand jury witnesses.  The plaintiff alleges that her defense attorney contacted Davis via email a few days later, stating that the wrong person was in custody.

The criminal case was then handed off to Assistant District Attorney Waverly Settles for presentment to the Fulton County grand jury on

September 2, 2011.  As a result, an indictment was issued against the plaintiff for aggravated assault.

On September 7, 2011, Wesley Vann, a victim-witness advocate in the district attorney's office, received a call from Boyd who informed Vann that the wrong name was being used and that he had seen Gilbert, the person who assaulted him, walking the streets.  Vann noted the information in the electronic file but did no further investigation.

On October 6, 2011, the plaintiff appeared before Fulton County Superior Court Judge Henry Newkirk.  In open court, Boyd told Assistant District Attorney Arthur Walton that the plaintiff was not the person who assaulted him.  Walton *nolle prosquied* the aggravated assault charge.  The unindicted charge of misdemeanor battery that Codrington included in the arrest citation was not addressed at that time.  Because the misdemeanor battery charge remained on the arrest citation, the plaintiff was not released from custody until October 12, 2011.

With regard to the moving defendants, the plaintiff's second amended complaint raises the following claims:

False and Malicious Prosecution and False Imprisonment pursuant to 42 U.S.C. § 1983 (Count II)

Denial of Rights under the State of Georgia's Constitution (Count III)

5

Malicious Prosecution pursuant to O.C.G.A. § 51-7-40 (Count V)

False Imprisonment pursuant to O.C.G.A. § 51-7-20 (Count VI)

Negligence (Count VII)

Conspiracy to Falsely Arrest, Maliciously Prosecute, and Falsely

Imprison (Count VIII)

Computer Invasion of Privacy pursuant to O.C.G.A. § 16-9-93 (Count

IX)

Intentional Infliction of Emotional Distress (Count X)

The plaintiff seeks monetary, declaratory, and injunctive relief against all

defendants.  Additionally the plaintiff seeks punitive damages and attorney's

fees.

## Analysis

### I. Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure authorizes summary

judgment "if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  The

party seeking summary judgment bears the burden of demonstrating that no

dispute as to any material fact exists.  *Adickes v. S.H. Kress & Co.*, 398 U.S.

144, 156 (1970); *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996).  The

moving party's burden is discharged merely by "'showing'—that is, pointing

out to the district court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Johnson*, 74 F.3d at 1090. Once the moving party has adequately supported its motion, the nonmovant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In deciding a motion for summary judgment, it is not the court's function to decide issues of material fact but to decide only whether there is such an issue to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). The applicable substantive law will identify those facts that are material. *Id.* at 247. Facts that in good faith are disputed, but which do not resolve or affect the outcome of the case, will not preclude the entry of summary judgment as those facts are not material. *Id.* Genuine disputes are those by which the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* "Genuine" factual issues must have a real basis in the record. *See Matsushita*, 475 U.S. at 586. "Where the record

taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id.* at 587 (citations omitted).

## II. Claims for Injunctive and Declaratory Relief

The declaratory and injunctive relief sought by the plaintiff is set forth in the second amended complaint at pages 156 through 158 [Doc. No. 60]. Throughout all of the paragraphs in this section, the plaintiff refers to "Defendants." The plaintiff does not specify what requirements she seeks to place on which defendants. This shotgun approach is inappropriate. It is not the court's responsibility to sift through the plaintiff's claims to determine what relief should be aimed at which defendant. However, as set forth below, the court has undertaken this task in order to adjudicate the current motion for summary judgment.

The court has reviewed the claims for mootness, which is the basis for the moving defendants' motion for summary judgment. The Eleventh Circuit has instructed that when considering a challenge to injunctive and declaratory relief on mootness grounds, it must be analyzed under Rule 12(b)(1) for lack of subject matter jurisdiction. *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1182 (11th Cir. 2007). The Eleventh Circuit

has explained the relationship between mootness and the court's subject

matter jurisdiction this way:

> Article III of the Constitution limits the jurisdiction of the federal
> courts to the consideration of "Cases" and "Controversies." . . .
> [A] case is moot when it no longer presents a live controversy
> with respect to which the court can give meaningful relief.  If
> events that occur subsequent to the filing of a lawsuit . . . deprive
> the court of the ability to give the plaintiff . . . meaningful relief,
> then the case is moot and must be dismissed.

*Sheely*, 505 F.3d at 1183.  Furthermore, Rule 12(h)(3) requires the court, if it

determines it lacks subject matter jurisdiction, to dismiss the action.

Here, the plaintiff is no longer in custody or facing prosecution.

Therefore, as to the majority of requests contained in the second amended

complaint, the court cannot give her meaningful injunctive relief.  All

requests pertaining to requirements of how suspects are identified,

investigated, arrested, and detained [Doc. No. 60 at 156–158, ¶¶ 7(c), (d), (e),

(f), 8(a), (b), (c), (d), (e), (f), (j)] do not address actual harm the plaintiff now

faces.  Likewise, the requests related to how the District Attorney's office

receives and processes complaints from law enforcement and responds to

victim statements [Doc. No. 150 at 156–158, ¶¶ 7(g), (h), (i), (j), (k), 8(g), (h),

and (i)] do not pertain to a current risk of harm to the plaintiff.

There is an exception to the mootness doctrine when the harm is

capable of repetition yet evading review.  "[T]he capable-of-repetition doctrine

Case 1:12-cv-02180-CAP   Document 181   Filed 04/24/14   Page 10 of 27


applies only in exceptional situations," *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983), "where the following two circumstances [are] simultaneously present:  (1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." *Spencer v. Kemna*, 523 U.S. 1, 17–18 (1998).  There is no reasonable expectation that the plaintiff will again be arrested and prosecuted because she shares the same first name of a suspect who was also involved in a dispute with her boyfriend.  Accordingly, the claims for injunctive relief related to the plaintiff's arrest, incarceration, and prosecution [Doc. No. 60 at 156–158 at ¶¶ 7 (c)–(k), 8] are moot, and this court lacks subject matter jurisdiction to adjudicate them.  Because there is a lack of subject matter jurisdiction as to these claims, they are DISMISSED.

The remaining claim for injunctive relief that pertains to the moving defendants seeks an order requiring the deletion and expunction of the plaintiff's criminal record as it relates to the arrest in this case [Doc. No. 60 at 156, ¶ 7(a)].  In order to receive injunctive relief,  the plaintiff must establish that there was a violation, that there is a serious risk of continuing irreparable injury if the relief is not granted, and the absence of an adequate remedy at law.  *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000).  As to

having her criminal record expunged, the plaintiff has an adequate remedy at law because O.C.G.A. § 35-3-37 provides a process for challenging the contents of one's criminal history record.  Accordingly, the moving defendants are entitled to judgment as a matter of law with respect to the plaintiff's claim for an injunction requiring that they expunge her criminal record.

Finally, as to the declaratory relief sought by the plaintiff,[3] the only request that is applicable to the moving defendants is the plaintiff's request to declare that the moving defendants violated the plaintiff's legal and constitutional rights by prosecuting the plaintiff with no probable cause to believe that the plaintiff had committed any crime [Doc. No. 60 at 156, ¶ 6(c)].  However, the plaintiff may not obtain declaratory relief as to past constitutional violations.  It is well settled that where there is "no ongoing violation of federal law, a federal court cannot issue a declaratory judgment that state officials violated federal law in the past."  *Taylor-Tillotson v. Florida Dep't of Children & Families Circuit 15, Palm Beach Unit*, No. 12-81364-CIV, 2013 WL 6050968 (S.D. Fla. Nov. 14, 2013)  (citing *Green v.*

---

[3] The plaintiff contends that the defendant failed to move for summary judgment on her claims for declaratory relief.  However, the moving defendants did include declaratory relief as a part of their motion.  *See* Br. In Support of M. Summ. J. [Doc. No. 155 at 16].  Therefore, the moving defendants' motion for leave to file a second motion to address the declaratory relief [Doc. No. 178] is DENIED as moot.  Likewise, the second motion for summary judgment [Doc. No. 177] is DISMISSED as moot.

*Mansour*, 474 U.S. 64, 73 (1985)).  Here the plaintiff seeks nothing more than a declaration that conduct that occurred in the past violated her rights.  This relief is not available.  Accordingly, the moving defendants are entitled to summary judgment on the plaintiff's claim for declaratory relief.

## III. Prosecutorial Immunity—Individual Capacity Claims Against Howard, Keel, Putnam, Settles, and Davis

Howard, Keel, Putnam, Settles, and Davis moved for summary judgment on the plaintiff's federal and state law claims on the basis of prosecutorial immunity.  In responding to the motion for summary judgment, the plaintiff argued that Putnam and Davis are not entitled to prosecutorial immunity.  Therefore, it appears that the plaintiff has conceded that her federal and state law claims against Howard, Keel, and Settles are barred.  Accordingly, this court will analyze the applicability of prosecutorial immunity as to Putnam and Davis only.

"[A] prosecutor enjoys absolute immunity from § 1983 suits for damages when he acts within the scope of his prosecutorial duties."  *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976).  The Supreme Court has taken a functional approach to the question of whether prosecutors are absolutely immune from liability under § 1983, explaining that "conduct in 'initiating a prosecution and in presenting the State's case,' . . . insofar as that conduct is

'intimately associated with the judicial phase of the criminal process' " is entitled to such immunity. *Burns v. Reed*, 500 U.S. 478, 486 (1991) (quoting *Imbler*, 424 U.S. at 430–431); *see also Mullinax v. McElhenney*, 817 F.2d 711, 714–715 (11th Cir. 1987) ("prosecutors are entitled to absolute immunity from damages under Section 1983 for all acts 'intimately associated with the judicial phase of the criminal process'") (quoting *Imbler*, 424 U.S. at 430).

On the other hand, absolute immunity does not extend to a prosecutor engaged in essentially investigative or administrative functions. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) ("A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity."); *Burns*, 500 U.S. at 489–90 (denying absolute immunity to prosecutor who gave legal advice to law enforcement officials in connection with investigative techniques). Thus, when a prosecutor functions as an administrator rather than as an officer of the court, the prosecutor is entitled only to qualified immunity. *See id.; see also Mullinax*, 817 F.2d at 715.

As to state law claims against prosecutors, the Georgia Constitution provides "[d]istrict attorneys shall enjoy immunity from private suit for

actions arising from the performance of their duties." Ga. Const. art. VI, § 8,

para. 1(e).

> The rationale behind this immunity is that prosecutors, like judges, should be free to make decisions properly within the purview of their official duties without being influenced by the shadow of liability. Therefore, a district attorney is protected by the same immunity in civil cases that is applicable to judges, provided that his acts are within the scope of his jurisdiction. The determining factor appears to be whether the act or omission is intimately associated with the judicial phase of the criminal process.

*Mosier v. State Board of Pardons & Paroles*, 445 S.E.2d 535, 537 (Ga. Ct.

App. 1994) (quoting *Robbins v. Lanier*, 402 S.E.2d 342, 343 (Ga. Ct. App.

1991)).  Therefore, to assess the applicability of prosecutorial immunity from

the federal and state law claims, the court must analyze the acts and

omissions alleged against Putnam and Davis to determine whether the

prosecutors were acting in association with the judicial phase of the criminal

proceedings against the plaintiff.

### A. ADA Stephen Putnam

Putnam worked in the Complaint Room of the Fulton County District

Attorney's Office.  According to District Attorney Paul Howard, the job of the

ADA manning the Complaint Room is to determine whether there is a factual

basis for criminal charges and to seek to strengthen a case factually.  The

Complaint Room ADA does this by reviewing the facts sent by a police officer and discussing the facts with the officer.

The allegations of wrongdoing as to Putnam include his failure to fully investigate the facts surrounding the arrest of the plaintiff despite his knowledge that there was a discrepancy as to the names and birthdates between the incident report and the arrest citation.  The plaintiff emphasizes that the wrongdoing occurred during Putnam's factual investigation prior to any decision to charge the plaintiff.  Thus, according to the plaintiff, Putnam was fulfilling functions normally done by a supervising police officer, not acting in association with the judicial phase of a criminal proceeding. The Supreme Court has held that "[a]dvising the police in the investigative phase of a criminal case is not so 'intimately associated with the judicial phase of the criminal process' that it qualifies for absolute prosecutorial immunity." *Burns*, 500 U.S. at 480.  However, in a later case, the Court clarified "that absolute immunity applies when a prosecutor prepares to initiate a judicial proceeding." *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009).  Likewise, the Georgia Court of Appeals has held, "[T]here is no question that a prosecutor's decision to file formal criminal charges against an individual is an act intimately associated with the judicial phase of the criminal process." *Robbins*, 402 S.E.2d at 343.

In this case, Putnam was not involved in the investigative process undertaken by the police prior to the plaintiff's arrest. Rather, he reviewed the facts presented to him by the officers and sought information from additional sources in order to make a charging decision after the officers had already arrested the plaintiff. Putnam's complete role was to decide whether to charge and whom to charge. Therefore, he is entitled to absolute immunity as to the state and federal claims seeking money damages brought by the plaintiff.

### B. ADA Melanie Davis

Assistant District Attorney Davis also worked in the Complaint Room. On the day after the plaintiff's arrest, Davis reviewed Putnam's notes, the arrest citation, Aguinaga's incident report, Boyd's statement, and a Georgia Crime Information Center report on the plaintiff. In the complaint, the plaintiff alleges that despite the discrepencies Davis noted between the arrest citation and the incident report, she argued at the First Appearance hearing that the plaintiff should not be released from jail without a bond. Afterwards, Davis did not follow-up with Boyd, Codrington, or Aguinaga to confirm that the correct suspect was in custody.

When Boyd received paperwork from the District Attorney's office regarding the criminal case, it indicated that the defendant was "Teresa

Culpepper."  Boyd contacted the District Attorney's office to inform the prosecutors that the wrong person was in custody.  Davis was told about this call, but she did not act on the information.

Davis appeared on behalf of the State at the First Appearance hearing. While the plaintiff argues that there is no evidence that Davis made any arguments to the court, this contention is directly contrary to the facts alleged by the plaintiff in the second amended complaint.  However, even if Davis simply appeared as representative of the state without making argument at the First Appearance hearing, this act and all preparation for the court hearing was "intimately associated with the judicial phase of criminal proceedings."

In response to the motion for summary judgment, the plaintiff points to deposition testimony of Davis in which she recalls her only role in the case was preparing subpoenas for the grand jury, which is an administrative task. However, there are no allegations of wrongdoing related to the subpoena process.  Rather, the plaintiff contends that Davis failed to act on obvious exculpatory information.  Notably, however, the information the plaintiff refers to came to Davis as she prepared to represent the State in the First Appearance hearing.  Accordingly, Davis is entitled to prosecutorial immunity as to the claims for money damages by the plaintiff.

**IV.   Qualified Immunity—Individual Capacity Claims Brought Pursuant to § 1983 Against Vann**

A government official who is sued in his individual capacity under § 1983 may seek summary judgment on the ground that he is entitled to qualified immunity.  *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1263 (11th Cir. 2004).  To be eligible for qualified immunity, the official must first establish that he was performing a "discretionary function" at the time the alleged violation of federal law occurred.  *Id.* at 1263–64.  Once the official has established that he was engaged in a discretionary function, the plaintiff bears the burden of demonstrating that the official is not entitled to qualified immunity.  *Id.* at 1264.  In order to demonstrate that the official is not entitled to qualified immunity, the plaintiff must show two things: (1) that the defendant has committed a constitutional violation and (2) that the constitutional right the defendant violated was "clearly established" at the time he did it.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Holloman*, 370 F.3d at 1264.

To determine whether an official was engaged in a discretionary function, the court considers whether the acts the officials undertook "are of a type that fell within the employee's job responsibilities."  *Holloman*, 370 F.3d at 1265.  As to Vann, the moving defendants assert that making decisions as

a victim advocate as to what information must be conveyed to assistant district attorneys are discretionary acts. The plaintiff's allegations regarding Vann are that he was "acting in his role as employee of the District Attorney." [Doc. No. 60 at 15–16]. Furthermore, the allegations of wrongdoing against Vann are that after speaking with Boyd on September 7, 2011, he failed to pass on Boyd's claim that the wrong person was being charged to the prosecuting attorneys, i.e., that Vann did not perform his job properly. While the plaintiff vaguely argues that the defendants "were performing only ministerial functions," [Doc. No. 168 at 18], this distinction is irrelevant for the application of qualified immunity as to the plaintiff's federal claims. Thus, the court finds that the moving defendants have demonstrated that as to the wrongful acts or omissions by Vann occurred as he was acting in the scope of his authority, and the burden shifts to the plaintiff to prove that Vann's conduct violated clearly established law.

The plaintiff contends that Vann maliciously prosecuted her in violation of her Fourth Amendment right to be free from unreasonable seizures. To establish a federal malicious prosecution claim under § 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution and (2) a violation of her Fourth Amendment right to be free from unreasonable seizures. *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003).

The Eleventh Circuit has held that for purposes of a § 1983 malicious prosecution claim, the constituent elements of the common law tort of malicious prosecution include: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff's favor; and (4) caused damage to the plaintiff accused. *Uboh v. Reno*, 141 F.3d 1000, 1004 (11th Cir. 1998).

Vann has offered his own affidavit in which he states that he has no role in prosecutorial decisions [Doc. No. 15-9 at 2].  In response, the plaintiff offers nothing more than speculation about what decisions the assigned prosecutors may have made had Vann followed up on statements made by Boyd.  There is no evidence from which a jury could find that the prosecution against the plaintiff was instituted or continued because of acts or omissions of Vann.  Therefore, Vann is entitled to qualified immunity as to the § 1983 claim against him.

## V.    State Law Claims Against Vann—Applicability of Official Immunity

The state law claims against Vann set forth in the complaint are: Denial of Rights under the Georgia Constitution (Count III); Malicious Prosecution Pursuant to O.C.G.A. § 51-7-40 (Count V); False Imprisonment Pursuant to O.C.G.A. § 51-7-20 (Count VI); Negligence (Count VII);

Conspiracy to Falsely Arrest, Maliciously Prosecute, and Falsely Imprison

(Count VIII); Computer Invasion of Privacy Pursuant to O.C.G.A. § 16-9-93(c)

(Count IX); and Intentional Infliction of Emotional Distress (Count X).

Art. I, § II, ¶ IX(d) of the Georgia Constitution provides for official

immunity:

> Except as specifically provided by the General Assembly in a
> State Tort Claims Act, all officers and employees of the state or
> its departments and agencies may be subject to suit and may be
> liable for injuries and damages caused by the negligent
> performance of, or negligent failure to perform, their ministerial
> functions and may be liable for injuries and damages if they act
> with actual malice or with actual intent to cause injury in the
> performance of their official functions. Except as provided in this
> subparagraph, officers and employees of the state or its
> departments and agencies shall not be subject to suit or liability,
> and no judgment shall be entered against them, for the
> performance or nonperformance of their official functions. The
> provisions of this subparagraph shall not be waived.

Thus, a public officer or employee may be personally liable only for

ministerial acts negligently performed or for discretionary acts performed

with malice or an intent to injure. *Harvey v. Nichols*, 581 S.E.2d 272, 276

(Ga. Ct. App. 2003).

### A. Ministerial Acts

"A ministerial act is commonly one that is simple, absolute, and

definite, arising under conditions admitted or proved to exist, and requiring

merely the execution of a specific duty." *Harvey*, 581 S.E.2d at 276.  In the

motion for summary judgment, the moving defendants argue that the record does not connect Vann to any ministerial act.  In response to the motion, the plaintiff contends that Vann negligently failed to notify Boyd, the victim, as to the rescheduled Grand Jury date of September 2, 2011, which according to the plaintiff, was a ministerial act because Georgia's crime victim bill requires such notification.  However, the plaintiff did not make this allegation in her complaint.  She may not amend the complaint in her response to the motion for summary judgment.  Accordingly, Vann is entitled to summary judgment on the plaintiff's claim of negligence in performance of a ministerial act.

**B. Discretionary Acts**

A discretionary act, "calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." *Harvey*, 581 S.E.2d at 276.  The plaintiff's claims that Vann failed to provide prosecutors with the information he received in his telephone conference with Boyd falls squarely in the ambit of discretionary acts.  It is undisputed in this case that Vann noted the comments made by Boyd in the office's electronic filing system.  The plaintiff has not even alleged that there was a

requirement or a procedure in place that called for Vann to report the details of his conversation with the victim to one of the assigned prosecutors.

In order to survive summary judgment as to the state law claims in which the plaintiff alleges that a defendant breached his duties in performing discretionary acts, the plaintiff must meet the actual malice standard.  In *Merrow v. Hawkins*, 467 S.E.2d 336 (Ga. 1996), the Georgia Supreme Court held that in the context of official immunity, "actual malice" requires a deliberate intention to do wrong.  "Actual malice requires more than harboring bad feelings about another.  While ill will may be an element of actual malice in many factual situations, its presence alone cannot pierce official immunity; rather, ill will must also be combined with the intent to do something wrongful or illegal." *Adams v. Hazelwood*, 520 S.E.2d 896, 898 (Ga. 1999).

Vann submitted his own affidavit in which he states that he did not intentionally frame or hold the plaintiff in custody [Doc. No. 155-9 at 3].  In response to the motion for summary judgment, the plaintiff argues that there is a genuine issue of fact as to whether Vann's actions were malicious and cites to eleven enumerated points:

> (1) Vann knew that FCDA had the "wrong name in the system" and that Boyd had known the defendant "for years as Gilbert and not Culpepper" (Keel Dep., p.111, ln. 5-14; Pl. Ex. 44,

p.FC000000776; Boyd Dep., p.43, ln. 20-23), but aside from making a single entry in Pro Dialogue, Vann did nothing to alert anyone to the identification issue;

(2) He apparently ignore [sic] information from Boyd that he had seen Gilbert walking the streets, (*id.*, p.35, ln. 1-11), and FCDA had the wrong person in custody, (*id.*, p.39, ln. 5-15), and, in doing [sic.] knowingly ensured that the guilty person remained free while the innocent person remained in jail for a crime she did not commit;

(3) Vann proudly proclaimed he would have done nothing with the information Putnam entered into Pro Dialogue, even though he recognizes that the note entered by Putnam suggested there was confusion about whether the right person had been arrested. (*Id.*, p.38, ln. 17-25, p.39, ln. 1-3).

(4) Vann, like both Putnam and Davis before him, simply assumed someone else would take care of the identification issue. (*See id.*, p.39, ln. 4-11);

(5) Vann would not have called anyone because Vann stays "in his lane[]", (*id.*, p.39, ln. 12-18), and even if Vann had known when he talked with Boyd on September 7, 2011 that on August 26, 2011 the defense lawyer had told Davis there was a problem with the identification of the suspect, Vann still would have done nothing, even though the victim claimed FCDA had the wrong person in custody. (*Id.*, p.44, ln. 1-9);

(6) Vann believed the fact that Plaintiff was in jail and she was not supposed to be is "someone else's problem." (*Id.*, p.45, ln. 2-7);

(7) Vann would not have done anything differently even if he knew definitely that Plaintiff wasn't the person who had committed the crime. (*Id.*, p.45, ln. 22-25, p.46, ln. 1-2);

(8) Personally, Vann does not care because it is not his job to fix the problem. (*Id.*, p.46, ln. 11-25, p.47, ln. 1-5);

(9) Vann does not concern himself at all with issues related to identity. (*Id.*, p.30, ln. 22-25, p.31, line 1).

(10) Vann does not believe it is important to make sure that the person who had committed the crime against the Boyd was not still on the street and it is not part of his job or responsibility. (*Id.*, p.33, ln. 21-25, p.34, ln. 1-7); and

(11) Vann and Keel "chuckled" when they saw the story about Plaintiff on the local news. (*Id.*, p.42, ln. 14-23).

[Doc. No. 168 at 30–32].[4]  The plaintiff contends that the facts cited above demonstrate that Vann acted with "conscious disregard." [Doc. No. 168 at 32].

Actual malice is more than conscious disregard.  In order to survive summary judgment the plaintiff must adduce evidence that Vann's acts or omissions in performance of his discretionary duties were motivated by a deliberate intention to do wrong.  *White v. Traino*, 535 S.E.2d 275, 278 (Ga. Ct. App. 2000).  While the plaintiff's evidence paints a picture of an employee with the "It's Not My Job" mentality, there is nothing to establish that Vann sought to inflict harm on the plaintiff.  Accordingly, Vann is entitled to

---

[4] The plaintiff's citation throughout parts 3 through 11 are "id." citations that refer to Boyd's deposition.  However, while the plaintiff never actually cited Vann's deposition, it appears the plaintiff is referring to Vann's deposition rather than Boyd's.  Excerpts from Vann's deposition are attached to the response to the motion for summary judgment and review of those excerpts reveal the testimony described in parts 3 through 11.

official immunity as to the state law claims against him based upon his discretionary acts.

## VI. Punitive Damages

The moving defendants seek summary judgment as to the plaintiff's claim for punitive damages.  In response, the plaintiff argues that under § 1983, she is entitled to punitive damages if she can demonstrate a violation of her rights.  However, the plaintiff's § 1983 claims as to the moving defendants are barred under the doctrines of prosecutorial immunity and qualified immunity.  Therefore, the plaintiff cannot obtain punitive damages against these defendants.  The moving defendants are entitled to summary judgment as to the claim for punitive damages.

## VII. Conclusion

Based on the foregoing,

(1) the plaintiff's claims against Ashley Thornton are DISMISSED WITHOUT PREJUDICE;

(2) the plaintiff's claims for injunctive relief related to the plaintiff's arrest, incarceration, and prosecution [Doc. No. 160 at 156–158 at ¶¶ 7 (c)–(k), 8] are DISMISSED;

(3) the plaintiff's motion for oral argument [Doc. No. 171] is DENIED;

(4) the moving defendants' motion for leave to file a second motion for summary judgment out of time [Doc. No. 178] is DENIED;

(5) the moving defendants' motion for summary judgment [Doc. No. 155] is GRANTED;

(6) the second motion for summary judgment [Doc. No. 177] is DISMISSED AS MOOT; and

(7) the dismissal of the City of Atlanta, Jaidon Codrington, Nicole Aguinaga, Justin Strom, Fulton County, Georgia, Arthur Walton, Jamie Wilson, Felicia Deas, Lenore Vanderpool, Vernissa Perry, and Sharon Jackson [Doc. No. 153] is APPROVED, and

(8) because this order resolves all remaining claims, the clerk is DIRECTED to close this civil action.

SO ORDERED, this 24th day of April, 2014.


/s/ Charles A. Pannell, Jr.
CHARLES A. PANNELL, JR.
United States District Judge